**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| RWJ BARNABAS HEALTH, INC., RWJBH CORPORATE SERVICES, INC., CLARA MAASS MEDICAL CENTER, COMMUNITY MEDICAL CENTER, INC., COOPERMAN BARNABAS MEDICAL CENTER INC., JERSEY CITY MEDICAL CENTER, INC., MONMOUTH MEDICAL CENTER, INC. O/B/O MONMOUTH MEDICAL CENTER AND MONMOUTH MEDICAL CENTER SOUTHERN CAMPUS, NEWARK BETH ISRAEL MEDICAL CENTER, INC., ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL, INC. O/B/O ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL AND ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL SOMERSET, ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL AT HAMILTON, INC., ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL RAHWAY, AND TRINITAS REGIONAL MEDICAL CENTER, | CIVIL ACTION NO.: |
| Plaintiffs, | **NOTICE OF REMOVAL** |
| v. | |
| AETNA HEALTH INC. AND AETNA U.S. HEALTHCARE INC., | |
| Defendants. | |

      **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446,

Defendants Aetna Health Inc. and Aetna U.S. Healthcare Inc. (collectively, "Aetna"), hereby

remove the case styled as *RWJ Barnabas Health, Inc. et al. v. Aetna Health Inc. and Aetna U.S.*

*Healthcare Inc.*, No. MON-L-003268-24 (the "State Court Action"), from the Superior Court of

New Jersey, Monmouth County, where it is now pending, to the United States District Court for the District of New Jersey.

The bases for this removal are: (1) that this matter is removable pursuant to the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1); and (2) that this matter is removable under 28 U.S.C. §§ 1331 and 1441(a) because Plaintiffs' state law claims "implicate significant federal issues" and "turn on substantial questions of federal law[.]" *See*, *e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g. & Mgf.*, 545 U.S. 308, 312-320 (2005).

## **PROCEDURAL BACKGROUND**

1.      According to the Complaint, a copy of which is attached as Exhibit A, Plaintiffs comprise a hospital system and numerous hospitals conducting business, including the provision of health care services, at various locations in New Jersey. (*See* Compl. (Ex. A) ¶¶ 5-15.)

2.      On September 30, 2024, Plaintiffs instituted the State Court Action by filing and serving Aetna with a Complaint. (*See* Proof of Service (Ex. B).)

3.      No other proceedings have been conducted in the Superior Court of New Jersey, Civil Practice Division, Monmouth County.  (*See* State Ct. Dkt. (Ex. C).)

4.      This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within thirty days of service of the Complaint.

5.      All Defendants join in the removal of this action, are represented by the undersigned, and consent to the removal of this action to this Court. The undersigned is duly authorized to effect removal on behalf of Defendants.

6.      Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly filed with the Clerk of the Superior Court of New Jersey, Civil Practice Division, Monmouth County and served on Plaintiffs' counsel of record.

7.      In filing this Notice of Removal, Aetna does not waive, and expressly preserves, any and all rights and defenses it may assert, including the right to arbitrate some or all of Plaintiffs' claims, by motion or otherwise with respect to the action and Complaint.

8.      Pursuant to 28 U.S.C. § 1446(a), venue is proper in this Court because it is the district and division embracing the place where the State Court Action is pending.

## THE REMOVED ACTION AND NATURE OF THE DISPUTE

9.      Plaintiffs' claims against Aetna relate *only* to claims allegedly billed by Plaintiffs to Aetna in relation to members of Aetna's Medicare Advantage plans. (Ex. A ¶ 1.)

10.     Plaintiffs' breach of contract claim is premised on provisions allegedly requiring Aetna to comply generally with state and federal law. (*See*, *e.g.*, *id.* ¶¶ 3, 24, 29, 32, 36, 40, 44.) From these general provisions, Plaintiffs claim that Aetna was required to comply with, but allegedly did not comply with, the "Centers for Medicare & Medicaid Services ('CMS') Two Midnight Rule." (*Id.* ¶¶ 3, 49-57.)

11.     Plaintiffs also assert a claim seeking declaratory relief in the form of a declaration that "the Two Midnight Rule applies to Aetna's Medicare Advantage products for dates of service up until December 31, 2023." (*Id.* ¶ 96.)

12.     Thus, Plaintiffs' state law claims turn on a substantial question of federal law (*i.e.*, whether the Two Midnight Rule applied to Medicare Advantage plans prior to January 1, 2024).

13.     Plaintiffs' position—that the so-called Two Midnight Rule applied to Medicare Advantage plans prior to January 1, 2024—is contradicted by CMS's own statement on the issue. For example, in its Announcement of Calendar Year (CY) 2019 Medicare Advantage Capitation Rates and Medicare Advantage and Part D Payment Policies and Final Call Letter, CMS wrote:

> Another commenter requested that CMS require the Original Medicare two-midnight policy be applied by MA organizations. <u>CMS disagrees with the</u>

commenter; MA plans must furnish medically necessary covered services at the medically appropriate level of care, and may adopt the Original Medicare two-midnight policy for in-network hospital services when classifying a stay as inpatient or observation.

(CY 2019 Final Call Letter at 206 (emphasis added) (Ex. D).)

14.    Moreover, national hospital systems and industry groups have recognized publicly that Traditional Medicare's Two-Midnight Rule became applicable to Medicare Advantage organizations only as of January 1, 2024.

15.    Thus, a central legal issue in dispute in this matter is the scope and applicability of the Two-Midnight Rule to Medicare Advantage organizations prior to January 1, 2024, which raises a federal question.

## GROUNDS FOR REMOVAL

### FEDERAL OFFICER REMOVAL UNDER 28 U.S.C. § 1442(a)(1)

16.    Federal officer removal is permitted even where the United States or its employees are not named as defendants in the litigation. 28 U.S.C. § 1442(a)(1) (allowing for removal of civil actions directed at "any officer (*or any person acting under that officer*) of the United States or of any agency thereof . . . for or relating to any act under color of such office" (emphasis added)). The fundamental purpose of federal officer removal jurisdiction is to "protect the Federal Government from the interference with its operations." *Watson v. Philip Morris Cos., Inc*., 551 U.S. 142, 150 (2007). The statute "is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015), *as amended* (June 16, 2015) (quoting *Sun Buick, Inc. v. Saab Cars USA, Inc*., 26 F.3d 1259, 1262 (3d Cir. 1994)).

17.    The federal officer removal statute "is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the

plaintiff's complaint establishes that the case arises under federal law." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)). The federal officer removal statute is to be "'broadly construed' in favor of a federal forum." *Id.* (citations omitted).

18.    This action is removable under 28 U.S.C. § 1442(a)(1) because it is a civil suit against a "person acting under" federal officers or agencies.

19.    Federal officer removal is appropriate because Aetna acted as a contractor of a federal agency, the United States Department of Health and Human Services ("HHS") and, therein, Centers for Medicare & Medicaid Services ("CMS"), in connection with Medicare Advantage plans; Plaintiffs sued Aetna for actions Aetna took as a contractor for HHS; and Aetna has colorable federal defenses to Plaintiffs' claims.

20.    CMS operates and administers Medicare. *See* 42 U.S.C. §§ 1395-1395*lll* (the "Medicare Act").

21.    Congress enacted the Medicare Act to establish a "a federally subsidized health insurance program to be administered by the Secretary [of Health and Human Services]." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984). Medicare enrollees may elect to receive their benefits in one of two ways: (1) through Medicare Parts A and B, referred to as the "original" Medicare service, 42 U.S.C. § 1395w-21(a)(1)(A), or (2) through a Medicare Part C plan, commonly referred to as a Medicare Advantage ("MA") plan. *Id.* § 1985w-21(a)(1)(B).

22.    CMS is permitted to contract with private health insurance carriers to administer Medicare and carry out CMS's duties under Medicare Part C. *See*, *e.g.*, 42 U.S.C. § 1395W-25; 42 C.F.R. §§ 421.200, 422.1–422.615. These contractors are often referred to as Medicare Advantage Organizations ("MAO").

23.     Medicare Advantage plans are not private insurance; they are funded out of the same trust funds that support Medicare Parts A and B, 42 U.S.C. § 1395w-23F, and are governed by the Medicare Act and its implementing regulations.

24.     Each MAO must contract with CMS to provide Medicare benefits. 42 U.S.C. § 1395w-27. Under that contract, CMS delegates the administration of Medicare benefits to an MAO, like Aetna. *See id*.

25.     Aetna is a MAO that provides Medicare benefits under Part C of the Medicare Act to beneficiaries that elect to enroll in its Medicare Advantage plans. *See* 42 U.S.C. § 1395w-22(a); *see also* Ex. A ¶ 18.

26.     Plaintiffs allege that they submitted claims to Aetna for patients who were enrolled in Medicare Advantage plans, but that Aetna improperly denied the claims in violation of CMS's Two Midnight Rule. (Ex. A ¶¶ 3, 49-57.)

27.     In its capacity as an MAO, Aetna acted "under color of" federal authority for purposes of 28 U.S.C. § 1442(a)(1) removal jurisdiction. Specifically, Aetna assists CMS by conducting a basic governmental task: administering Medicare benefits. But for the contract, the federal government itself would need to perform this task.

28.     This action is removable under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), because Aetna acts under a federal officer, the Secretary of Health and Human Services ("HHS"), in its capacity as an MAO, contracting with CMS to administer Medicare benefits through its Medicare Advantage plans.

29.     "[I]n order to properly remove a case under § 1442(a)(1), a defendant must meet four requirements: (1) [the defendant] is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its

agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are 'for, or relating to' an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims." *Papp*, 842 F.3d at 812 (quoting *Defenders Ass'n*, 790 F.3d at 467). All of these requirements are met here.

30.    First, Defendants Aetna Health Inc. and Aetna U.S. Healthcare Inc. are both corporations, so they are "persons" within the meaning of § 1442(a)(1). *See Papp*, 842 F.3d at 812 (holding that corporations are persons within meaning of the statute).

31.    Second, Aetna is "acting under" the Secretary of HHS's authority when it administers claims for Medicare benefits under its Medicare Advantage plans. *See MHA, LLC v. Amerigroup Corp.*, No. 218CV16042KMJAD, 2021 WL 226110, at *5 (D.N.J. Jan. 21, 2021) (concluding, "in agreement with nearly ever other court that has considered the issue," that MAOs are "acting under" the federal government in administering MA plans); *Spark Inspiration Lab'y, LLC v. UnitedHealthcare Ins. Co.*, No. 23-CV-02890 (MCA) (JRA), 2024 WL 3541929, at *4 (D.N.J. May 17, 2024) ("[C]ourts across the country, including those in this District, consistently hold that, by providing Medicare coverage and reimbursing providers, MAOs help the government produce an item that it needs, and therefore, satisfy the acting under requirement." (collecting cases)), *report and recommendation adopted sub nom. Spark Inspiration Lab'y, LLC. v. UnitedHealthcare Ins. Co.*, No. CV 23-2890(MCA), 2024 WL 3540415 (D.N.J. July 23, 2024). Here, Aetna acted under the direction of CMS in administering healthcare benefits on behalf of the federal government for Medicare beneficiaries in Aetna's Medicare Advantage plans. Aetna operates based on its contract with CMS. Absent the delegation of authority from HHS/CMS to Aetna, HHS/CMS would have needed to fulfil these governmental responsibilities themselves.

32.     Third, Plaintiffs' claims relate to acts Aetna took under color of federal office. To meet this third requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *Papp*, 842 F.3d at 813 (quoting *Defender Ass'n*, 790 F.3d at 471). Such a connection exists here because Plaintiffs' allegations are premised on Aetna's alleged failure to pay Medicare claims in accordance with CMS regulations. (Ex. A ¶¶ 3, 67-70.) *See Spark Inspiration*, 2024 WL 3541929, at *5 (finding third element of federal officer removal satisfied where plaintiff's allegations "are premised upon [defendant's] failure to pay pursuant to its obligations under the CMS Contract"); *MHA*, 2021 WL 226110, at *7 (similar).

33.     Fourth, Aetna has colorable federal defenses to Plaintiffs' claims:

a.      For purposes of a colorable federal defense, all that matters "is that a defense raises a federal question," like whether a defendant's acts violate federal law. *Defenders Ass'n*, 790 F.3d at 473-74 (concluding that defendant had raised colorable federal defense where it claimed "that it was not violating the terms of [a federal statute]" because the defense "requires interpretation of federal statutes"); *see also Mesa v. California*, 489 U.S. 121, 130 (1989) ("To assert that a federal statute does not impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute does impose other obligations that may shield the federal officer against civil suits."). Aetna is not required to show it is likely to succeed on its federal defense, only that the defense "could be reasonably asserted." *MHA, LLC*, 2021 WL 226110, at *7. Here, the central thread of Plaintiffs' allegations is that "Aetna systematically has violated, and continues to violate, the Centers for Medicare & Medicaid Services ('CMS') Two Midnight Rule," which they claim has "defined what constitutes inpatient services covered by the Medicare program" since 2013. (*E.g.*, Ex. A

¶ 3 (emphasis omitted); *see also id*. ¶¶ 49-66 (detailing Plaintiffs' theory of how Aetna has not complied with certain federal regulations.) Aetna denies these allegations. One of Aetna's defenses will be that the Two-Midnight Rule did not apply to MAOs prior to January 1, 2024, and therefore Aetna did not breach the Parties' contracts. Thus, while the causes of action arise under state law, they hinge on a substantial question of federal law.

      b.    *Second*, Aetna has a colorable federal defense of express federal preemption under the Medicare Act, which contains the following express preemption provision: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b); 42 C.F.R. § 422.402; *see also Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010). In this case, Plaintiffs allegations focus on the Two-Midnight Rule, a standard established under Traditional Medicare to guide when reimbursement is appropriate on an inpatient basis. CMS implemented the Two-Midnight Rule with respect to Traditional Medicare, but explicitly refused to extend the application of the Two-Midnight Rule to Medicare Advantage plans *unless they voluntarily elected to abide thereby*. *See*, *e.g.*, CY 2019 Final Call Letter at 206 (Ex. D) (rejecting suggestion that CMS should require MAOs to comply with Two-Midnight Rule). Through this action, Plaintiffs seek a declaration expanding the application of the Two-Midnight Rule beyond the application directed by federal regulation and in contravention of CMS's explicit guidance. Therefore, these state law claims are preempted by the extensive CMS regulations and other guidance articulating the scope of the Two-Midnight Rule.

34.     In light of the foregoing, Aetna's removal of this action to this Court is proper pursuant to 28 U.S.C. § 1442(a)(1).

35.     Given that removal is proper under 28 U.S.C. § 1442(a)(1), this Court has jurisdiction over the entire case. *Lewis v. Asbestos Corp.*, No. CIV.A. 10-650 FLW, 2012 WL 3240941, at *6 (D.N.J. Aug. 7, 2012) (finding that because defendant had established all elements of federal officer removal, "the Court has jurisdiction over the entire case").

### FEDERAL QUESTION REMOVAL UNDER 28 U.S.C. § 1331

36.     The Supreme Court of the United States has "recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. The "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* (citations omitted).

37.     In this case, as set forth above, Plaintiffs allege that Aetna breached their contracts by breaching boilerplate provisions through which Aetna agreed to generally abide by federal and state law. (*See, e.g., id.* ¶¶ 3, 24, 29, 32, 36, 40, 41.) Specifically, Plaintiffs claim that these generalized agreements required the application of Traditional Medicare's Two-Midnight Rule to Medicare Advantage plans prior to January 1, 2024. (*Id.* ¶¶ 3, 49-66.)

38.     Plaintiffs also seek declaratory relief on this federal question. (*Id.* ¶ 96.)

39.     The question of whether the Two-Midnight Rule applied to Medicare Advantage plans prior to January 1, 2024 is a "pure question of law" that is appropriate for resolution in federal court. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (declining to exercise federal question jurisdiction and comparing to the facts in *Grable*, 545 U.S.

at 313, which are analogous to the facts in this case given the centrality of this federal issue to the state law claims asserted).

40.    This case raises a federal question that is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

41.    As set forth above, CMS previously rejected Plaintiffs' theory that the Two-Midnight Rule applied to Medicare Advantage plans prior to January 1, 2024. *See* CY 2019 Final Call Letter at 206 (Ex. D).

42.    The meaning and scope of this federal regulation is "an important issue of federal law that sensibly belongs in federal court." *Empire Healthchoice*, 547 U.S. at 700 (quoting *Grable*, 545 U.S. at 315). Federal court is the appropriate forum for resolution of this issue, which impacts only federal health care programs.

43.    Aetna's removal of this action to this Court is proper pursuant to 28 U.S.C. § 1441(a)(1) based on the Court's original jurisdiction under 28 U.S.C. § 1331.

44.    Under 28 U.S.C. § 1367, this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Accordingly, this Court has jurisdiction over the entire action.

WHEREFORE, Aetna respectfully requests that the State Court Action be removed to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446.

Dated: October 29, 2024

Respectfully submitted,

*s/ Mariellen Dugan*
Mariellen Dugan, Esq.
Richard Spatola, Esq.

**CALCAGNI & KANEFSKY, LLP**
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
Tel: 862-397-1796
MDugan@ck-litigation.com
RSpatola@ck-litigation.com

**ROBINS KAPLAN LLP**

Nathaniel J. Moore (*pro hac vice forthcoming*)
Erica D. Rosenbaum (*pro hac vice forthcoming*)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
NMoore@RobinsKaplan.com
ERosenbaum@RobinsKaplan.com

*Counsel for Aetna Health Inc. and Aetna U.S. Healthcare Inc.*

## **Local Civil Rule 11.2 Certification**

RWJBarnabas Health filed a Demand for Arbitration with the American Arbitration Association against Aetna US Healthcare, Aetna Health Inc, and its Affiliates on January 25, 2024, which was assigned Case Number: 01-24-0000-5977. That action remains pending.

I certify under penalty of perjury that the foregoing is true and correct. Executed on October 29, 2024.

*/s/ Mariellen Dugan*

Mariellen Dugan

## **CERTIFICATE OF SERVICE**

I certify that on October 29, 2024, I caused true and correct copies of this Notice of Removal to be filed electronically with the Court by the Court's ECF system and served upon Plaintiff's counsel by sending a true and correct copy of the foregoing by email to:

Craig Carpentino
King & Spalding LLP
ccarpenito@kslaw.com

*/s/ Mariellen Dugan*

Mariellen Dugan
